# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PNC BANK, NATIONAL ASSOCIATION,**

        **Plaintiff,**

v.                                            Case No:  6:17-cv-1433-Orl-31DCI

**SUITE 208 HOLDINGS, LLC.,
RICHARD POWELL, SR. , RICHARD
POWELL, JR. , JOSEF POWELL and
FRANTZ ALPHONSE,**

        **Defendants.**

## AMENDED REPORT AND RECOMMENDATION[1]

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **RENEWED MOTION FOR DEFAULT SUMMARY JUDGMENT (Doc. 34)** |
| **FILED:** | December 21, 2017 |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part**.

### I.  Background

This case stems from two loans that PNC Bank, N.A.'s (Plaintiff) predecessor, RBC Centura Bank (RBC),[2] extended to Suite 208 Holdings, LLC (Suite 208) in May 2007 (collectively,

---

[1] This amended Report stems from the Court's ruling on Plaintiff's motion for reconsideration, Doc. 38, and incorporate the changes discussed in the Court's order granting the motion for reconsideration.  Doc. 39.

[2] RBC merged with and into Plaintiff on March 2, 2012.  Doc. 1-1 at 2.

the Loans), as well as a line of credit that Plaintiff extended to Suite 208 in November 2012. Docs. 1; 1-1 at 8-11; 41-48; 78-81.  The principal amount of the first loan (Loan 1) was $195,000.00, with an interest rate of 8.45% per annum.  Doc. 1-1 at 8.  The principal amount of the second loan (Loan 2) was $53,325.57, with an interest rate of 8.25% per annum.  Doc. 1-1 at 41.  The line of credit had a limit of $25,000.00.  Doc. 1-1 at 78.  Suite 208 executed promissory notes in relation to each of the Loans and the line of credit.  Doc. 1-1 at 8-11, 41-48, 78-81.  The Loans and the line of credit were each secured by guarantees executed by Richard Powell, Sr., Richard Powell, Jr., Josef Powell, and Frantz Alphonse (collectively, the Individual Defendants).  Docs. 1; 1-1 at 24-39, 61-76, 83-98.  The Loans were also secured by separate mortgages on real property located at 6000 Metrowest Blvd., Suite 208, Orlando, Florida 32835 (the Metrowest Property).  Docs. 1; 1-1 at 13-22, 50-59.

Plaintiff alleges that Suite 208 and the Individual Defendants (collectively, the Defendants) have not made monthly payments on Loan 1 since December 25, 2016.  Doc. 1 at ¶ 21.  Thus, Plaintiff alleges that Suite 208 is in default under Loan 1, and, based on the terms of Loan 2, Suite 208 is in default under Loan 2, which, as of November 2014, included the debt accrued under the line of credit opened in November 2012.  *Id.* at ¶ 22; *see* Doc. 1-1 at 102.  Plaintiff, likewise, alleges that the Independent Defendants have breached their respective guarantees by failing to make payments on the Loans.  Doc. 1 at ¶¶ 32, 38, 44, 50, 71, 77, 83, 89.  On March 23, 2017, Plaintiff sent Defendants a letter notifying them of the default, and demanded the remaining balances on Loan 1, which, according to the letter, had a principal balance of $150,138.52, and Loan 2, which, at that time, had a principal balance of $15,219.35, be paid in full no later than April 7, 2017.  Docs. 1 at ¶ 23; 1-1 at 104-111.  Defendants failed to pay the remaining balances on the Loans.  *See* Doc. 1.

Plaintiff filed a complaint against Defendants asserting the following claims, which can be grouped as follows:

Claims related to Loan 1:
- Count I – Breach of contract against Suite 208;
- Count II – Breach of guaranty against Richard Powell, Sr.;
- Count III – Breach of guaranty against Richard Powell, Jr.;
- Count IV – Breach of guaranty against Josef Powell;
- Count V – Breach of guaranty against Frantz Alphonse;
- Count VI – Foreclosure;

Claims related to Loan 2:
- Count VII – Breach of contract against Suite 208;
- Count VIII – Breach of guaranty against Richard Powell, Sr.;
- Count IX – Breach of guaranty against Richard Powell, Jr.;
- Count X – Breach of guaranty against Josef Powell;
- Count XI – Breach of guaranty against Frantz Alphonse;
- Count XII – Foreclosure.

Doc. 1. In light of the foregoing claims, Plaintiff requested: 1) an award of damages against Defendants with respect to Loan 1 totaling $158,715.48, plus interest thereafter at a rate of $35.24 per diem; 2) foreclosure of the first mortgage on the Metrowest Property; 3) an award of damages against Defendants with respect to Loan 2 totaling $14,701.06, plus interest thereafter at a rate of $3.53 per diem; and 4) foreclosure of the second mortgage on the Metrowest Property. *Id*.

Plaintiff served Defendants in August 2017, and none of them appeared to defend this action in the time provided under the Federal Rules of Civil Procedure. Docs. 11; 17; 20; 27; 33. Thus, Plaintiff moved for default against Defendants, and the Clerk subsequently entered default against Defendants. Docs. 13; 16; 19; 24; 29.

Plaintiff filed the motion at bar – Renewed Motion for Default Summary Judgment (Motion) – arguing that the allegations in the Complaint and the evidence presented in support of

the Motion[3] demonstrate that it is entitled to default summary judgment against Defendants. Doc. 34 at 8-9.  Thus, Plaintiff requests an order granting the Motion and entry of judgment against Defendants and a final judgment of foreclosure on the Metrowest Property, which: 1) directs the United States Marshal to conduct a public sale of the Metrowest Property; 2) permits Plaintiff to credit bid its judgments or any portion thereof at the public sale; 3) grants first and second lien priority over the proceeds of any sale of the Metrowest Property by virtue of the first and second mortgages; and 4) awards attorney fees and costs *in rem* in the foreclosure.  *Id*. at 9.

**II.     Standard of Review**

Plaintiff originally moved for summary judgment (Doc. 30), but the Court denied that motion for various reasons and granted Plaintiff leave to file a renewed motion (Doc. 32).  The Court, though, admonished Plaintiff that "if [it] continues to seek summary judgment in its renewed motion, it must explain why it is seeking summary judgment as opposed to default judgment pursuant to Federal Rule of Civil Procedure 55(b)."  Doc. 32 at 7 n.5.  Plaintiff has not provided the clarity requested by the Court, but, instead, has further muddied the waters, because Plaintiff now discusses the default judgment standard under Federal Rule of Civil Procedure 55 and the summary judgment standard under Federal Rule of Civil Procedure 56.  Doc. 34 at 6.  The undersigned will not opine on whether default or summary judgment is appropriate in this context, but does decline Plaintiff's implicit invitation to apply both standards of review in determining whether Plaintiff is entitled to the relief it seeks.  Thus, the undersigned will construe the Motion as one seeking default judgment pursuant to Federal Rule of Civil Procedure 55(b).

---

[3] Plaintiff attached a declaration from its asset manager, Casey Young, and the same documents attached to the Complaint to its Motion.  Docs. 34-1; 34-2; 34-3; 34-4; 34-5; 34-6; 34-7; 34-8; 34-9; 34-10; 34-11; 34-12; 34-13; 34-14.

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment. First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default. Fed. R. Civ. P. 55(a). Second, after obtaining clerk's default, the plaintiff must move for default judgment. Fed. R. Civ. P. 55(b). Before entering default judgment, the court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[4]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If a plaintiff fails to meet this pleading standard, then the plaintiff will not be entitled to default judgment.

---

[4] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

If the plaintiff is entitled to default judgment, then the court must consider whether the plaintiff is entitled to the relief requested in their motion for default judgment. If the plaintiff seeks damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of damages sought in the motion for default judgment. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008). Unlike well-pled allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages. *Id*. (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)). Therefore, even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages). Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages. *See Adolph Coors*, 777 F.2d at 1543-44. However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also Wallace*, 247 F.R.D. at 681 ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").

### III.  Discussion

#### A.  Subject Matter Jurisdiction

Plaintiff has sufficiently demonstrated that the parties are completely diverse, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Docs. 1 at ¶¶ 2-7, 27, 33, 39, 45, 51, 60, 66, 72, 78, 84, 90, 99; 34-1 at ¶ 5.  Therefore, the undersigned finds that the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

#### B.  Clerk's Default

Defendants were each served with a summons and a copy of the Complaint in August 2017.  Docs. 11; 17; 20; 27; 33.  Defendants neither appeared in this case nor responded to the Complaint in the time provided by the Federal Rules of Civil Procedure.  Therefore, the undersigned finds that the Clerk properly entered default against Defendants.

#### C.  Liability

Plaintiff asserts three categories of claims: 1) breach of promissory note; 2) breach of guaranty; and 3) foreclosure.  The promissory notes, guarantees, and mortgages provide that, to the extent not preempted by federal law, they are governed by Florida law.  Doc. 1-1 at 9, 19, 26, 30, 34, 38, 42, 56, 63, 67, 71, 75.  Thus, the undersigned will apply Florida law in addressing Plaintiff's claims for breach of the promissory notes and the guarantees, as well as its claims for foreclosure.

##### 1.  Breach of Promissory Note

Plaintiff claims that Suite 208 breached the promissory notes securing the Loans.  Doc. 1 at ¶¶ 24-28, 63-67.  A claim "for breach of a promissory note is the same as a breach of a contract action."  *Cadence Bank, N.A. v. Windolf*, 2015 WL 473835, at *2 (N.D. Fla. Feb. 4, 2015) (citing *Wane v. Loan Corp.*, 926 F. Supp.2d 1312, 1324 (M.D. Fla. 2013)).  A party asserting a claim for

breach of contract under Florida law must establish: 1) the existence of a valid contract; 2) a material breach of the contract; and 3) damages resulting from the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4th DCA 2008)). Further, the party asserting a claim for breach of a promissory note must also establish that it is the owner of the promissory note and possesses the original. *Dasma Invs., LLC v. Realty Assocs. Fund III, L.P.*, 459 F. Supp. 2d 1294, 1302 (S.D. Fla. 2006).

The Complaint contains the following relevant allegations. RBC extended two loans to Suite 208, and Suite 208 executed two promissory notes to secure the Loans. Docs. 1 at ¶¶ 9-10, 13; 1-1 at 8-10, 41-43. Plaintiff is the successor of RBC and is the holder and in possession of the original promissory notes. Docs. 1 at 2; 1-1 at 2-3; *see* Doc. 34-1 at ¶ 6. The promissory note for Loan 1 provides that Suite 208 will default if it "fails to make any payment when due under this Note." Doc. 1-1 at 8. Suite 208 has not made payments on Loan 1 since December 25, 2016, and, thus, is in default under the terms of the promissory note for Loan 1. Doc. 1 at ¶ 26. The promissory note for Loan 2 provides that Suite 208 will default it "fails . . . to comply with or to perform any term, obligation, covenant, or condition contained in any other agreement between [Plaintiff] and [Suite 208]." Doc. 1-1 at 41. Suite 208's failure to make payments on Loan 1 resulted in default under the terms of the promissory note for Loan 2. Doc. 1 at ¶ 65. There were principal balances of $150,138.52 and $14,014.35 due on Loans 1 and Loan 2, respectively, at that time Suite 208 defaulted. *Id*. at ¶¶ 27, 66. Those amounts, plus interest thereon, remain outstanding. *See id*. at ¶¶ 22-23. Suite 208 admits these well-plead allegations by virtue of its default; and these allegations are sufficient to establish each element that Suite 208 breached the promissory notes. Thus, the undersigned finds that Plaintiff is entitled to default judgment on Counts I and VII of the Complaint.

**2. Breach of Guarantees**

Plaintiff claims that the Individual Defendants breached their respective guarantees. Doc 1 at ¶¶ 29-52, 68-91. "A breach of guaranty claim is akin to a breach of contract claim under which the guarantor is alleged to have breached its promise by failing to pay the debt of another on the default of the person primarily liable for payment." *Ecp Station I LLC v. Chandy*, Case No. 8:15-cv-2523-T-JSS, 2016 WL 3883028, at *3 (M.D. Fla. June 29, 2016) (citing *New Holland, Inc. v. Trunk*, 579 So. 2d 215, 217 (Fla. 5th DCA 1991); *Swan Landing Dev., LLC v. Fla. Capital Bank, N.A.*, 19 So. 3d 1068, 1072 (Fla. 2d DCA 2009)). Thus, as previously mentioned, a party asserting a claim for breach of contract under Florida law must establish: 1) the existence of a valid contract; 2) a material breach of the contract; and 3) damages resulting from the breach. *Vega*, 564 F.3d at 1272.

The Complaint contains the following relevant allegations. RBC extended two loans to Suite 208, and Suite 208 executed two promissory notes to secure the Loans. Docs. 1 at ¶¶ 9-10, 13; 1-1 at 8-10, 41-43. The Individual Defendants executed guarantees in relation to the Loans. Docs. 1 at ¶¶ 12, 15; 1-1 at 24-39, 61-76. Plaintiff is the successor of RBC and is the holder and in possession of the guarantees. Docs. 1 at 2; 1-1 at 2-3; *see* Doc. 34-1 at ¶ 6. The guarantees each provide that the "[g]uarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the indebtedness of [Suite 208] to [Plaintiff], and the performance and discharge of all [Suite 208's] obligations under the Note and the Related Documents." Doc. 1-1 at 24, 28, 32, 36, 61, 65, 69, 73. The Individual Defendants were required, but failed, to make payments on the Loans after Suite 208 defaulted on the promissory notes, and thus breached their respective guarantees. Doc. 1 at ¶¶ 32, 38, 44, 50, 71, 77, 83, 89. There were principal balances of $150,138.52 and $14,014.35 due on Loans 1 and Loan 2, respectively, at that time Suite 208

defaulted. *Id*. at ¶¶ 27, 66. Those amounts, plus interest thereon, remain outstanding. *See id*. at ¶¶ 22-23. The Individual Defendants admit these well-plead allegations by virtue of their default; and these allegations are sufficient to establish that the Individual Defendants breached the guarantees. Thus, the undersigned finds that Plaintiff is entitled to default judgment on Counts II, III, IV, V, VIII, IX, X, XI of the Complaint.

### 3. Foreclosure

Plaintiff seeks to foreclose the mortgages on the Metrowest Property that were given to secure the promissory notes on the Loans. Doc. 1 at ¶¶ 53-62, 92-101. A judicial foreclosure is a remedy available to creditors who hold a security interest in real property. Fla. Stat. § 679.601(1)(a). A party seeking foreclosure on a mortgage must establish that it is the holder of the mortgage and that it is the holder of the note that is secured by the mortgage. *Citibank v. Dalessio*, 756 F. Supp. 2d 1361, 1365 (M.D. Fla. 2010) (citing Florida law). The party must also establish that the debtor defaulted on the terms of the note secured by the mortgage. *Id*.

The Complaint contains the following relevant allegations. RBC extended two loans to Suite 208, and Suite 208 executed two promissory notes to secure the Loans. Docs. 1 at ¶¶ 9-10, 13; 1-1 at 8-10, 41-43. Richard Powell, Sr., who is a member/manager of Suite 208, Doc. 1 at ¶ 3, executed mortgages on the Metrowest Property as security for the promissory notes. Doc. 1-1 at 13-22, 50-59. Plaintiff is the successor of RBC and is the holder and in possession of the original promissory notes and the mortgages on the Metrowest Property. Docs. 1 at 2; 1-1 at 2-3; *see* Doc. 34-1 at ¶ 6. Suite 208 was obligated, but failed, to make payments on Loan 1 since December 25, 2016, and, thus, is in default under the terms of the promissory notes for both Loans. Doc. 1 at ¶¶ 26, 65. Suite 208 admits these well-plead allegations by virtue of its default; and these allegations are sufficient to establish that Plaintiff is entitled to foreclose on the mortgages. Thus, the

undersigned finds that Plaintiff is entitled to default judgment on Counts VI and XII of the Complaint.

   **D. Relief**

   **1. The Individual Defendants**

Plaintiff seeks entry of judgment against the Individual Defendants.  Doc. 34 at 9.  Plaintiff states that as of September 28, 2017, it is owed the following: 1) a total of $160,970.60 on Loan 1, which is inclusive of the outstanding principal ($150,138.52) and the interest accrued thereon through September 28, 2017 ($10,832.08), plus interest thereafter at a rate of $35.24 per diem; and 2) a total of $14,769.02 on Loan 2, which is inclusive of the outstanding principal ($14,019.35)[5] and interest accrued thereon through September 28, 2017 ($750.07), plus interest thereafter at a rate of $3.55.[6]  Docs. 34 at 8-9; 34-1 at ¶¶ 21-22.

The undersigned finds that the record supports Plaintiff's claim concerning the outstanding principal on Loan 1, i.e., $150,138.52.  Docs. 1 at ¶ 27; 34-1 at ¶ 21.  The record, however, does not support Plaintiff's claim concerning the outstanding principal on Loan 2.  Plaintiff alleged that the outstanding principal on Loan 2 was $14,014.35.  Doc. 1 at ¶ 66.  Plaintiff, through Ms. Young's declaration, now claims that the outstanding principal on Loan 2 is $14,019.35.  Doc. 34-1 at ¶ 22.  Plaintiff provides no explanation for the slight increase in the outstanding principal on Loan 2.  Thus, absent any explanation for the increase, the undersigned finds that Plaintiff is only entitled to recover the outstanding principal on Loan 2 that was alleged in the Complaint, i.e., $14,014.35.

---

[5] This amount is slightly more than the principal amount Plaintiff alleged was due under Loan 2 at the time of default, i.e., $14,014.35.  Doc. 1 at ¶ 66.

[6] This amount is slightly more than the per diem interest rate Plaintiff alleged in the Complaint, i.e., $3.53 per diem.  Doc. 1 at 11-16.

The undersigned, next, finds that Plaintiff's calculations of interest on the Loans through September 28, 2017, are not supported by the record. Plaintiff, through Ms. Young's declaration, claims that a total of $10,832.08 in interest has accrued on Loan 1 through September 28, 2017. Doc. 34-1 at ¶ 21. Plaintiff, however, fails to explain how it calculated this figure, which, based on the information in the record, appears to be excessive. Specifically, the record establishes that Suite 208 defaulted on the promissory note for Loan 1 on December 25, 2016, at which time there was an outstanding principal of $150,138.52 on Loan 1, which was accruing interest at $35.24 per diem. Doc. 1 at 5-6. Thus, based on this evidence, a total of $9,761.48 in interest has accrued on Loan 1 between December 25, 2016 and September 28, 2017.

Plaintiff, likewise, fails to explain how it calculated the interest on Loan 2, i.e., $750.07, which appears to be less than what Plaintiff may be entitled to collect in interest on Loan 2 through September 28, 2017. Specifically, the record establishes that Suite 208 defaulted on the promissory note for Loan 2 on December 25, 2016, at which time there was an outstanding principal of $14,014.35 on Loan 2, which was accruing interest at $3.53 per diem.[7] Doc. 1 at 11-12. Thus, based on this evidence, a total of $977.81 in interest has accrued on Loan 2 between December 25, 2016 and September 28, 2017. Yet, since Plaintiff seeks a lesser amount, the undersigned finds that Plaintiff should be awarded the amount it seeks.

In light of the foregoing, the undersigned finds that Plaintiff is entitled to collect the following from the Individual Defendants in light of their breach of the guarantees: 1) a total of $159,900.00 on Loan 1, which is inclusive of the outstanding principal ($150,138.52) and the

---

[7] The undersigned finds that the daily interest rate set forth in the Complaint should apply, i.e., $3.53, Doc. 1 at 12, because Plaintiff has provided no explanation why the interest rate for Loan 2 set forth in the Motion and supporting declaration increased to $3.55 per diem. *See* Docs. 34; 34-1.

interest accrued thereon through September 28, 2017 ($9,761.48), plus interest thereafter at a rate of $35.24 per diem; and 2) a total of $14,764.42 on Loan 2, which is inclusive of the outstanding principal ($14,014.35) and interest accrued thereon through September 28, 2017 ($750.07), plus interest thereafter at a rate of $3.53 per diem.

### 2. Foreclosure

Plaintiff also seeks a judgment of foreclosure on the Metrowest Property, which: 1) directs the United States Marshal to conduct a public sale of the Metrowest Property; 2) permits Plaintiff to credit bid its judgments or any portion thereof at the public sale; 3) grants first and second lien priority over the proceeds of any sale of the Metrowest Property by virtue of the first and second mortgages; and 4) awards attorney fees and costs *in rem* in the foreclosure.  Doc. 34 at 9.  Plaintiff is entitled to relief it seeks, with two exceptions.  First, the Court should not grant Plaintiff first and second lien priority over the proceeds of the sale of the Metrowest Property, because Plaintiff has provided no argument why this relief is appropriate where it is unclear whether other parties may have lien interests – perhaps superior lien interests – in the Metrowest Property.  Second, while Plaintiff is entitled recover its attorney fees and costs under the instruments at issue, Doc. 1-1 at 9, 18, 26, 30, 34, 38, 42, 55, 63, 67, 71, 75, Plaintiff has failed to demonstrated that its attorney fees and costs are reasonable, *see* Docs. 34; 34-1.  Thus, Plaintiff must file a motion to quantify the attorney fees and costs it seeks.

### IV.   Conclusion

Accordingly, it is **RECOMMENDED** that:

1. The Motion (Doc. 34) be **GRANTED** as follows:

    a. The Court find that Plaintiff is entitled to default judgment on Counts I – XII of the Complaint;

    b. The Court enter judgment against the Individual Defendants, jointly and severally, on Counts II, III, IV, V, VIII, IX, X, XI of the Complaint for the total amount of $174,664.42, plus interest thereon from September 29, 2017 forward at a rate of $38.77 per diem;

    c. The Court direct Plaintiff to file the following no later than 14 days after the Court enters its order on this report:

        i. A proposed judgment of foreclosure that is consistent with this report; and

        ii. A motion quantifying Plaintiff's reasonable attorney fees and costs;

    d. Plaintiff may bid its judgment at the sale of the Metrowest Property, subject to any liens with priority;

2. The Motion (Doc. 34) be **DENIED** in all other respects.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 31, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy